**Ethel A. Goodman, Plaintiff-Appellee, v. Ronald Goodman, Defendant-Appellant.**

Gen. No. 69–141.

Second District.

June 25, 1970.

Rehearing denied July 30, 1970.

Gale L. Marcus, of Chicago, for appellant.

Synek, Bishart & Solomon, of Chicago, for appellee.

JUSTICE THOMAS J. MORAN delivered the opinion of the court.

In late 1965, plaintiff and defendant entered into a property settlement agreement. Both parties were represented by counsel of their choice and in the agreement they acknowledged that each had fully informed the other of the nature and extent of their individual assets. On December 2, 1965, a hearing was held and a decree of divorce entered in plaintiff's favor. Both parties appeared in court and were represented by their attorneys. The divorce decree adopted the property settlement agreement and found it to be both fair and equitable.

In June, 1966, plaintiff filed her first petition for rule to show cause upon the defendant for failure to make child support payments under the decree and agreement. The defendant countered with a petition for reduction of child support. After hearing evidence the trial court denied defendant's petition for reduction and found the defendant guilty of willful contempt.

In June of 1967, litigation recommenced with the defendant's second petition for reduction and the plaintiff's second petition for rule to show cause. The trial court held a number of hearings and it appears fair to state from the record that it reached the following conclusions: First, that the defendant was in arrears in excess of $15,000 under the divorce decree; second, that while the defendant had received medical treatment for alleged emotional problems, no such treatment had been re-

ceived after 1965; third, under the divorce decree and property settlement agreement, the defendant received, accepted and got the benefit of all of the stock in a certain public relations firm which he solely owned; fourth, that through the public relations business, operated by the defendant, almost $150,000 was received in a period from January, 1966, through April, 1968; fifth, that defendant commingled all of these monies "as a tactical maneuver to avoid creditors," this rather surprising admission coming from the defendant.

Finally, in July, 1968, the court found the defendant once again guilty of willful contempt and directed him to surrender his person on July 23, 1968. On the same day, the defendant filed a petition for leave to vacate the divorce decree entered in 1965. This petition alleged for the first time that the defendant was not mentally competent to enter into the property settlement agreement and that a guardian ad litem should have been appointed for him.

Defendant was given additional time to cure the arrearage, but that was never done. Finally, on May 2, 1969, the trial court issued a mittimus and dismissed all the defendant's pending petitions.

This appeal raises the following issues which we will discuss in turn: 1) that the trial court erred in dismissing defendant's petition to vacate the divorce decree brought under section 72 of the Civil Practice Act (Ill Rev Stats 1967, c 110, § 72); 2) that the trial court erred in finding the defendant in contempt and sentencing him to jail; 3) that the trial court erroneously excluded certain evidence; and 4) that the defendant's constitutional rights have been violated because he has, in effect, been jailed for failure to pay a debt.

■ 1) It is to be remembered that, throughout these proceedings, the defendant was represented by an attorney of his choice. He was never declared legally in-

competent and has not been so declared to this day. Defendant's petition under section 72 was properly considered by the trial court, not only in light of the allegations of the petition, but also from an examination of the entire record, McDonald v. Neale, 35 Ill App2d 140, 182 NE2d 366 (1962)—US cert den, 372 US 911. The petition contained only allegations which were in the original pleadings. It alleged some prior treatment for mental disturbance, but it did not allege that any treatment occurred in 1965 when the agreement was reached and the divorce decree entered, or at any time subsequent thereto. The petition itself was brought under subsection 3 of section 72 which provides:

"The petition must be filed not later than 2 years after the entry of the order, judgment or decree. Time during which the person seeking relief is under legal disability or duress or the ground for relief is fraudulently concealed shall be excluded in computing the period of 2 years."

The petition was filed more than two years after the entry of the decree and there was no allegation that defendant was under any legal disability, duress or that any ground for relief was fraudulently concealed. Therefore, on the face of the petition itself, the trial court did not err.

It is clear that the defendant has accepted all of the benefits of the divorce decree. As a result of that decree he obtained sole and complete ownership of his business. Having accepted the benefits, he should not be permitted to attack the decree and we conclude that his petition is barred by estoppel, Henley v. Houck, 49 Ill App2d 472, 200 NE2d 69 (1964); app den 30 Ill2d 626.

On the question of defendant's competence, it appears clear that the trial court ruled correctly. There was no allegation from which that conclusion could be

drawn other than the defendant's bald statement. The defendant was not legally incompetent and, of course, a mere allegation of incompetence would throw every divorce decree into jeopardy, were it successful. In this connection, the defendant draws our attention to the case of Merneigh v. Merneigh, 2 Ill App2d 352, 119 NE2d 492. There, the defendant had been declared to be an incompetent person, and even in that case, the court held that proceedings could be had if a guardian ad litem was appointed and the grounds for divorce occurred prior to insanity. This case is entirely different because there has been no such declaration, either then or now.

■ 2) Next, the defendant claims that the court erred in finding him guilty of willful contempt. The defendant appeared time and again. He did everything possible to avoid the court's orders. He failed to bring in records when asked to do so. He failed to reveal the sources and nature of his income. During a period of twenty-eight months, his various business ventures grossed almost $150,000. According to his own admission, he commingled his accounts so as to avoid his creditors. The trial court's patience was truly enduring. The ultimate decision to jail the defendant was fully in accordance with the evidence before the court.

■ 3) The defendant next alleges that the trial court erred in refusing to admit certain evidence which the defendant refers to as defendant's Exhibit No. 5. We find, however, that the same exhibit was admitted as defendant's Exhibit No. 16. Therefore, no error occurred.

■ 4) Finally, the defendant alleges that his constitutional rights were denied because he is being jailed for failure to pay a debt.

In the case of LaRue v. LaRue, 341 Ill App 411, 93 NE2d 823 (1950), the court said, at pages 414–415:

"A decree for alimony is not an ordinary money decree and is not regarded as a debt owing from a husband to his wife but rests on the natural and legal

195

duty of the husband to support his wife . . . and the commitment of a defendant for contempt for refusing to pay alimony is not an imprisonment for debt from which he can claim exemption under the provisions of the Constitution prohibiting imprisonment for debt."

In this case, the defendant has the obligation to support his wife and family. That obligation was reinforced by the decree of divorce and by the property settlement agreement. The defendant was sentenced to jail, as he should have been, because he willfully and repeatedly refused to obey the court's orders.

We find no error in this record and the judgment is therefore affirmed.

Judgment affirmed.

DAVIS, P. J. and ABRAHAMSON, J., concur.